**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES D. GRIFFITH,
Petitioner,

v.

BETHLEHEM STEEL CORPORATION;

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Respondents.

No. 96-2277

On Petition for Review of an Order
of the Benefits Review Board.
(95-1477)

Submitted: November 18, 1997

Decided: December 3, 1997

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael C. Eisenstein, Baltimore, Maryland, for Petitioner. Heather
Holt Kraus, Stuart M. Lesser, SEMMES, BOWEN & SEMMES, Bal-
timore, Maryland, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Griffith appeals from a decision of the Benefits Review Board ("Board") affirming by operation of law the administrative law judge's ("ALJ") decision to deny his application for disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901-950 (West 1986 & Supp. 1997). Pursuant to the Omnibus Consolidated Recessions and Appropriations Act of 1996, Pub. L. No. 104-134, § 101(d), 110 Stat. 1321, 1321-29 (1996), the Board automatically affirmed the ALJ's decision by failing to act on the appeal within one year of the date Griffith appealed to the Board. The parties agree that Griffith suffered a work-related injury when, on March 1, 1994, he fell backward several feet off of one pipe onto another. Griffith testified that he fell on his back and neck, injuring his left leg, left knee, left hip, lower back, and neck. He sought temporary total disability benefits from March 24, 1994, and continuing.

The ALJ determined that Griffith's injury did not impair his ability to work "even temporarily." He determined that Griffith was "a practiced malingerer," having previously collected benefits for eight months in 1991 for a pulled muscle injury, and having presented a very similar set of complaints in that case. Relying primarily on the dearth of objective evidence Griffith submitted to support his claim, the findings of several physicians who could find no organic basis for Griffith's complaints and opined that Griffith was embellishing his complaints, together with surveillance tapes of Griffith engaging in normal activities away from work, the ALJ concluded that Griffith had fooled several doctors who found him disabled based on Griffith's subjective complaints. Accordingly, benefits were denied.

On appeal, Griffith takes issue with the ALJ's characterization of virtually every piece of evidence in the record in support of his position that the overall record fails to support the ALJ's finding of no

2

disability. He first challenges the ALJ's summary of the findings of the medical personnel who treated Griffith immediately after the accident, arguing that he ignored important information corroborative of Griffith's claims of injury, such as the ambulance crew's notation of "pelvis on palp (pain)" at the "lower left extremity," and a hospital emergency room record noting a "positive anterior drawer sign of the anterior ligament." He also claims that the ALJ ignored "objective" medical findings by physicians who examined him within one week of his injury and diagnosed pain and tenderness, prescribed crutches, pain medication, and a knee immobilizer.

Initially, we note that there is no dispute that Griffith suffered a soft tissue injury on March 1, 1994. Even assuming that the notations of medical personnel who examined and treated Griffith provide "objective" evidence of some injury, such evidence does not undercut the ALJ's conclusion that Griffith was not disabled by his injury or injuries. In finding no disability, the ALJ found pertinent, among other factors, the relative lack of objective evidence supporting Griffith's subjective complaints. Contrary to Griffith's contentions, the record supports the ALJ's characterization of the medical evidence.

Griffith relies heavily on two laboratory studies tending to support his claim. The first is a nerve conduction study conducted on April 4, 1994, by Dr. Sellman. Dr. Sellman characterized the results of the study as "mildly abnormal." He stated that "[t]he findings suggest the presence of a mild left L5 or possibly S1 radiculopathy. These findings would help to explain the persistent complaints of low back pain radiating down the left leg." The other study, a CT scan performed by Dr. Stofberg on June 24, 1994, revealed a "central bulging of the annulus fibrosis, more so to the left," at the L5-S1 level, which "appears to be minimally impinging upon the nerve as it emerges from the thecal sac." Dr. Stofberg concluded that the study was "suggestive for a small focal herniation of the intervertebral disc at L5-S1, centrally to the left."

Dr. Stofberg's CT scan was contrary to a CT scan conducted on March 14, 1994, only days after the accident, which showed no abnormalities. Moreover, Dr. Wenzlaff, an orthopedic surgeon, sharply criticized the nerve conduction study, stating that Dr. Stofberg found bulging on the left side based on numbers relating exclusively to the

3

left side, but that to have a valid study the physician must compare the results of the left side to the right side. He further opined that, in his opinion, the results obtained on the left side were within normal limits in any event.

Employer also submitted into evidence an article from the New England Journal of Medicine discussing the fact that objective tests commonly show mild disc bulges in patients with no symptoms. Dr. Kan, an orthopedic surgeon who found Griffith disabled, conceded the validity of the article's conclusions. Moreover, there is no dispute among the physicians of record that Griffith's tests could not support a diagnosis of disc herniation without clinical correlation. While Griffith's brief argues that Dr. Stofberg's report notes that "clinical correlation is indicated," physicians for both the claimant and the employer testified that this medical language merely indicates that objective findings should be clinically correlated, not that they have been clinically correlated.

As with the objective evidence, the evidence of clinical correlation was in conflict. Such evidence consists of the levels of pain, weakness, and movement restrictions experienced by the patient. Dr. Kan conceded that physicians must largely rely on what the patient tells them in making their clinical findings. That is the rub in this case. The ALJ found that he could not credit Griffith's doctors' findings of disability because he believed that Griffith misled them about his symptoms, tainting their diagnoses.

An ALJ's factual findings must be affirmed if they are supported by substantial evidence. 33 U.S.C. § 921(b)(3) (1994); See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994). "We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence." See 36 F.3d at 380. In this case, abundant evidence supports the ALJ's factual findings. Perhaps most damaging to Griffith's case were the surveillance tapes, taken on several different days, of his activities away from work. As the ALJ stated:

> If there is any doubt of the nature of claimant's condition, it is resolved by the surveillance film. At the very time

4

claimant was complaining of disability, he was able to walk, bend, climb steps without any evidence of disability. While at home, he demonstrated his ability for normal physical activity. He did not use a cane, and there was no perceptible limitation on his movements. He developed limitations only when promoting his claim for total disability: the limp, the cane, and the complaints were acted out for the doctors, opposing lawyers, and for the court.

The ALJ discussed the films in more detail elsewhere in his opinion. The tapes flatly contradicted Griffith's testimony at the hearing and statements to doctors that he needed a cane to walk. The tapes captured him walking through his neighborhood and negotiating steps with normal posture and gait, without evidence of pain. As the ALJ noted, "he did not limp, he did not use a cane, and he moved with agility." Still more damaging to Griffith's credibility, the tapes showed him entering and exiting the offices of doctors and lawyers using the cane as though it were necessary to support himself, but then discarding it and moving normally as soon as he returned home.

The tapes also belied Griffith's claims of pain and range of motion restriction in his back, as they depicted him bending and stooping without any apparent difficulty. Further undercutting his credibility were the inconsistent and sometimes inexplicable subjective complaints he reported to his doctors. For example, Griffith's performance on straight-leg raising tests varied greatly from physician to physician, and Griffith was able to raise his leg from a sitting position, but not from a horizontal position, for Dr. Wenzlaff, who stated that his ability should have been the same from both positions. Griffith also told physicians that he was unable to ambulate on either his heel or his toes, but his physicians explained that disk herniation should effect only one or the other.

Finally, the ALJ noted the similarity of this case to a prior workers' compensation claim Griffith filed based on a 1990 injury. In that claim, Griffith missed eight months of work due to complaints of back pain similar to those alleged in this case. In that case, he convinced a physician that he was permanently disabled based on his subjective complaints, for what he in retrospect described as a pulled muscle having no residual effects.

5

We must respect the ALJ's credibility determinations. In this case, those credibility determinations provide ample support for his factual determination that Griffith was dishonest with his physicians, undermining the credibility of their reports. Because substantial evidence supports the ALJ's finding of no disability, the decision of the Board is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6